UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| MICHAEL D. HENDRICKSON, | 5:22-CV-5063 |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S SECOND MOTION TO COMPEL, GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS, DENYING DEFENDANT'S MOTION FOR STATUS CONFERENCE, AND DENYING DEFENDANT'S MOTION FOR PROTECTIVE ORDER** |
| vs. | |
| RAPID CITY, PIERRE & EASTERN R.R., INC. | |
| Defendant. | |

Pending before the Court is Plaintiff's Second Motion to Compel (Doc. 49), Plaintiff's Motion for Sanctions on Defendant's Discovery Dumps (Doc. 50), Defendant's Motion for Hearing Requesting Status Conference (Doc. 72), and Defendant's Motion for Protective Order for a Rule 30(b)(6) deposition (Doc. 77). These motions are the subject of this Memorandum Opinion and Order.

**Relevant Background**

On September 26, 2022, Plaintiff served upon Defendant Plaintiff's Interrogatories to Defendant, Set One and his Request for Production of Documents to Defendant, Set One. (Doc. 52-2; 52-3). In Set One of Plaintiff's Request for Production of Documents, Plaintiff requested the following:

> 34. All documents, alerts, notifications, and reports pertaining to the New Underwood Region of South Dakota for the time period of July 25, 2019, through August 3, 2019.
>
> 35. All documents pertaining to weather information pertaining to the New Underwood Region of South Dakota for the time period of July 25, 2019 through August 3, 2019.

(Doc. 52-5). In response, on November 9, 2022, Defendant provided RCPE's Daily Operation Bulletin. (Doc. 52-5). In Defendant's Answer to Set One of Plaintiff's Request for Interrogatories,

1

Defendant identified Mike Kellar as the roadmaster who oversaw this area of the track at the time of the incident. (Doc. 57-3). Defendant also identified, among others, Rod Wiseman, general manager for RCPE, and Jared Rutherford and Jared Hook, track inspectors who inspected the location in the lead up to the incident, as potentially having discoverable information. (Doc. 57-3).

In February 22 and 23, 2023, Plaintiff deposed Mike Kellar, Assistant General Manager of RCPE and Rod Wiseman, General Manager of RCPE. (Docs. 52-6, 52-8). During his deposition, Rod Wiseman testified that he did not know whether there was a major weather event that occurred during the area of the incident on August 2 or August 1, 2022. (Doc. 52-6, Wiseman Dep. 96:6-11). He testified that RCPE uses a service called AccuWeather, that everyone receives these AccuWeather notifications, but that it is dispatcher's responsibility to follow AccuWeather and let conductors and engineers know that there's a weather event going on in their path. (Doc. 52-6, Wiseman Dep. 96:12-97:15). Mr. Wiseman testified that he could not recall whether he looked at AccuWeather on August 2, 2019. (Doc. 52-6, Wiseman Dep. 97:21-25). He testified that AccuWeather makes the call whether there is a significant weather event, not RCPE. (Doc. 52-6, Wiseman Dep. 98:12-18).

Mike Kellar, the roadmaster who oversaw that area of the track at the time, testified that on the night in question, nobody received any notifications from AccuWeather of any weather-type events. (Doc. 52-8, Kellar Dep. 47:22-48:1). He testified that he believed Rod Wiseman and Blake Jones or somebody did an investigation of why RCPE was not notified of certain weather coming through the area and he believed they found out that the storm was far to the north and was not close enough to the tracks to determine that it would affect that railroad in any way. (Doc. 52-8, Kellar Dep. 48:2-12).

On March 2, 2023, Plaintiff deposed Jared Rutherford who was working as a track inspector that evening for RCPE. (Doc. 57-5). Mr. Rutherford testified that he was working about 75 miles from the derailment site and that he was not aware that there was a rainstorm going on around that area. (Doc. 57-5, Rutherford Dep. 34:11-20). He testified that if RCPE has a significant weather event, he will be informed "by my boss or my boss's boss, or by someone who makes decisions as far as where we go, how we go, when we go . . . whatever the weather event is, depending on the severity of it . . . he will get in touch with who he need to go out. Usually it

will be me as a track inspector or Justin [Hook] as a track inspector. . . ." (Doc. 57-5, Rutherford Dep. 60:15-24). He testified that his boss makes the determination of whether to inform the track inspectors of a severe weather event and whether to inspect track based upon SkyGuard reports. (Doc. 57-5, Rutherford Dep. 61:7-11). Mike Kellar was his roadmaster and then Tyler Van Asperen a little while later. (Doc. 57-5, Rutherford Dep. 18:6-12). On March 21, 2023, Plaintiff deposed track inspector, Jared Hook. (Doc. 57-6). Mr. Hook testified that he would be notified by the roadmaster when he needed to do a storm patrol. (Doc. 57-6, Hook Dep. 38:11-22). He testified that he did not know there was a storm in the area the night of the derailment. (Doc. 39:24-40:5).

On April 3, 2023, Plaintiff served upon Defendant Plaintiff's Interrogatories to Defendant, Set Two and his Request for Production of Documents to Defendant, Set Two. (Docs. 53-5; 53-6). On May 3, 2023, Defendant responded to question 26 in Set Two of Plaintiff's Interrogatories as follows:

> 26. Identify the name(s), position(s), and address(es) of the individual(s) responsible for determining if there was a significant weather event on or near Defendant's tracks for the location of the incident that is the subject matter of this litigation. Including any person who was responsible for determining an inspection of Defendant's tracks would be required prior to allowing railroad traffic on its tracks.
>
> ANSWER: RCPE objects to this request as overbroad and unduly burdensome and not limited in time. RCPE additionally objects to the extent that this request seeks information that is not within RCPE's control, and equally accessible to Plaintiff as AccuWeather is the party that determines if a significant weather event exists. Without waiving objections, AccuWeather makes the determination of whether a significant weather event exists. Roadmasters and trainmasters rely on the AccuWeather notification to determine whether an inspection was necessary for a specific event. See Responses to Interrogatory Nos. 3 & 5. On the date of the incident, RCPE did not receive a notice from AccuWeather/SkyGuard of a significant weather alert.

(Doc. 57-11). Defendant further provided in its May 3, 2023, Answer to Set Two Interrogatories that "if a notice is received from AccuWeather, the manager on duty will rely on the AccuWeather notification to make a determination of whether to have an affected area of track inspected. This determination is primarily based on the type of alert (snow, rain, wind, etc.) as well as the reported magnitude of the event." (Doc. 57-11). Defendant disclosed in its May 3, 2023, Response to Plaintiff's Set Two Request for Production of Documents that it had conducted email searches of Mike Kellar and Blake Jones, individuals who would have received SkyGuard warnings during

3

this time period, and disclosed the following email from SkyGuard@AccuWeather.com received by these individuals on August 2, 2019 at 12:34 a.m. :

Importance: High

WARNING 8196 for GWRR – Rapid City Pierre & Eastern
Start Time: 08/02/19, 12:34 AM CDT
Expire Time: 08/02/19, 5:00 AM CDT

Locations:
PRC Sub 1.5 S Wasta (MP 606.5) to PRC Sub 1.0 N New Underwood (MP 628.1)

Conditions;
Flash Flood

Comments:
Heavier rain is moving back into the area which has already seen 1.5-3 inches of rain over the last 3 hours. Look for an additional 1-2 inches to bring totals into the 2.5-5 inch range. Runoff will also move towards the track form the north in this area, thus watch for high water near track, flash flood conditions and potential washouts!

(Doc. 52-15).

On July 21, 2023—after the July 19, 2023 discovery deadline—in Defendant's Ninth Supplemental Responses to Plaintiff's Requests for Production of Documents, Set One, Defendant disclosed that in addition to Mike Keller and Blake Jones, the following other individuals and groups received the August 2, 2019 SkyGuard/AccuWeather flash flood warning: ARDC Dispatcher Group; ARDC RCPE Management; Chad Roob; Chase Hart; Crystal Blasius; Daniel Dalton; Gina Zink; Greg Mellon; John McDonald; Michael Anderson; Rod Wiseman; Ted Gibson; and Timothy Paluch. (Doc. 57-21). Defendant also disclosed for the first time a RCPE PowerPoint presentation that discussed the derailment. Therein, it stated that "ARDC ["American Rail Dispatching Center"] Received A Skyguard Alert For A Flashflood Warning for The Area But Allowed the Train to Depart Without Notifying Anyone Of The Alert Or Without Restrictions."

4

(Doc. 52-16; 57-21). There was no information on who authored this presentation, who it was presented to, nor the date. Many photographs of the derailment site were part of the presentation. On July 21, 2023, Plaintiff disclosed for the first time 170 photos of the derailment site taken by Tyler Van Asperen August 2, 2019 through August 23, 2019. (Doc. 57-21). Plaintiff had asked in Set One of Plaintiff's Interrogatories served on September 26, 2022, for "all photographs, videos, maps, drawings, diagrams, measurements, visual representations, or other descriptions regarding the facts alleged in Plaintiff's Complaint," yet these photographs were not produced until after the discovery deadline on July 21, 2023. (Doc. 57-3). Moreover, Mike Kellar had testified during his February 23, 2023, deposition that he did not recall Tyler Van Asperen working on the derailment at all. (Doc. 52-8, Kellar Dep. 71:14-72:8).

## DISCUSSION

Pending before the Court is Plaintiff's Second Motion to Compel (Doc. 49), Plaintiff's Motion for Sanctions on Defendant's Discovery Dumps (Doc. 50), Defendant's Motion for Hearing Requesting Status Conference (Doc. 72), and Defendant's Motion for Protective Order for a Rule 30(b)(6) deposition (Doc. 77).

### I.    Motion for Sanctions

On August 1, 2023, Plaintiff filed a Motion for Sanctions on Defendant's Discovery Dumps. (Doc. 50). Therein, Plaintiff states that since May 3, 2023, Plaintiff received "continuous dumps of previously undisclosed, relevant, and critical documentation and information that ha[d] been within Defendant's custody and control since before this litigation was initiated." (Doc. 50 at 665-66, 671). Plaintiff states also that disclosed to him two days after the close of discovery by Defendant was 170 photographs taken by Defendant's employee Tyler Van Asperen, an email from Skyguard warning of potential washouts prior to the derailment at issue along with a list of the email's recipients, and a PowerPoint presentation by an unknown employee of RCPE that states Defendant's dispatch "Received a Skyguard Warning Alert for a Flashflood Warning for The Area But Allowed the Train to Depart Without Notifying Anyone Of The Alert Or Without Restrictions." (Doc. 50 at 666). Plaintiff states that these disclosures occurred after all depositions had concluded and after expert disclosures had been served and that he was prevented from inquiring about these disclosures during depositions.

Plaintiff moves for sanctions under Rule 37(c)(1) of the Federal Rules of Civil Procedure. Plaintiff characterizes Defendant's actions has intentional concealment. (Doc. 50 at 672). Plaintiff requests that the Court sanction Defendant by finding RCPE liable for the Plaintiff's negligence claim and by ordering monetary sanctions. (Doc. 50 at 666). Plaintiff requests that the Court preclude Defendant from relying on evidence produced in its "discovery dumps" and award attorneys' fees to Plaintiff for the costs of bringing the present motion. (Doc. 50 at 677, 679). In the alternative, Plaintiff asks that the Court re-open discovery for Plaintiff to allow him to take and retake depositions with the opportunity to utilize the document dumps, along with the associated costs, including attorney fees, in conducting such discovery. (Doc. 50 at 679). Accompanying this Motion is Plaintiff's Rule 37.1 Certificate of Good Faith Conference. (Doc. 51).

Defendant opposes Plaintiff's Motion for Sanctions. (Doc. 57). Defendant states that Plaintiff did not meet and confer with defense counsel prior to filing the Motion. Defendant moves the Court to strike the Motion, arguing that Plaintiff has provided no evidence that RCPE and its counsel intentionally concealed evidence. (Doc. 57 at 1418-19). Defendant states that RCPE provided nine supplements to its responses to Plaintiff's first set of Requests for Production of Documents, two supplements to its answer to Plaintiff's first set of Interrogatories, four supplements to its responses to Plaintiff's second set of Requests for Production of Documents, and two supplements to its answer to Plaintiff's second set of Interrogatories, along with participating in eleven depositions. (Doc. 57 at 1419). Defendant states that it worked diligently to provide supplemental responses to written discovery requests as new information became available. (Doc. 57 at 1427). Defendant argues that Plaintiff's Motion for Sanctions was filed in bad faith and in violation of Rule 11. (Doc. 57 at 1428). Counsel for Defendant, Mr. Knight, attests that the attorney who signed the Motion for Sanctions on behalf of Plaintiff, Jeffrey Collins, has since withdrawn and disavowed the Motion and does not agree with or condone the "accusations" made in against RCPE and its attorneys. (Doc. 57 at 1418 n.2). The portion of the attestation which states that Attorney Jeffrey Collins disapproves of the Motion for Sanctions is not true. Attorney Collins expressly stated to the contrary in his Affidavit to the Court. (Doc. 69-1).

## A. Standard of Review

Federal Rule of Civil Procedure 26(a) requires litigants to make certain disclosures. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018). Rule 26(e)(1) requires a party to "timely" supplement or correct an interrogatory answer or request for production "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). The "timely manner" inquiry of Rule 26(e) considers when the new facts were supplemented relative to when the new facts were discovered by the supplementing party. *Hysitron Inc. v. MTS Sys. Corp.*, Civ. No. 07-1533, 2010 WL 55987, at *6 (D. Minn. Jan. 4, 2010). Rule 26(e) is "not an invitation to hold back material items and disclose them at the last moment." Wright & Miller, *Federal Practice & Procedure*, § 2049.1 (3d ed.); *see also Steady State Imaging, LLC v. Gen. Electric Co.*, Civ. No. 17-1048, 2018 WL 2047578, at *9 (D. Minn. May 2, 2018) (plaintiff's "close-of-discovery supplementation" was "not 'timely' for purposes of Rule 26(e)(1)" because the information was essential to defendant's understanding of the reason it was sued; plaintiff "viewed focusing on its litigation priorities as more important than actually identifying the [factual information] that formed the very basis of two of [its] claims"). If there is an untimely delay between finding the new facts and disclosing them through supplementation, then supplementation has not been effectuated in a timely manner. *Hysitron*, 2010 WL 55987 at *6. The duty to supplement continues past the discovery deadline and up to the time of trial. *Fair Isaac Corp. v. Fed. Ins. Co.*, 337 F.R.D. 413, 419 (D. Minn. Jan. 20, 2021) (citing *Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 343, 345 (8th Cir. 1979)).

The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37. *Vanderberg*, 906 F.3d at 702. Rule 37(c)(1) provides that when a party fails to comply with the disclosure requirements in Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) further provides:

> In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A)    may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B)    may inform the jury of the party's failure; and

(C)     may impose other appropriate sanctions, including any of the orders listed
in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). The purpose of sanctions under Rule 37(c) is "to deter abuse and
compensate the opposing party for 'all expenses, whenever incurred, that would not have been
sustained had the opponent conducted itself properly.'" *Johnson Int'l Co. v. Jackson Nat. Life Ins.
Co.,* 19 F.3d 431, 439 n.10 (8th Cir. 1994) (citation omitted).

If a party fails to provide information in compliance with Rule 26(a) or (e), the district
court has wide discretion to fashion a remedy or sanction as appropriate for the particular
circumstances of the case. *Wegener v. Johnson,* 527 F.3d 687, 692 (8th Cir. 2008) (citing Fed. R.
Civ. P. 37(c)(1); *Trost v. Trek Bicycle Corp.,* 162 F.3d 1004, 1008 (8th Cir. 1998) ("failure to
disclose in a timely manner is equivalent to failure to disclose")). In determining whether the
failure to supplement is justified or harmless and to help decide upon an appropriate sanction or
remedy, the district court should consider the reason for the noncompliance, the surprise and
prejudice to the opposing party, the extent to which allowing the information or testimony would
disrupt the order and efficiency of trial, and the importance of the information or testimony. *Id.*
However, a district court's discretion narrows as the severity of the sanction or remedy it elects
increases. *Id.* For example, where exclusion of evidence is tantamount to dismissal of claims, the
Eighth Circuit has held that a court should consider lesser sanctions. *See Heartland Bank v.
Heartland Home Fin., Inc.,* 335 F.3d 810, 817 (8th Cir. 2003).

**B. Application**

Defendant argues that the Court should deny Plaintiff's Motion for Sanctions because
Plaintiff failed to comply with the meet and confer requirement of Rule 37(1)(2)(A). The Eighth
Circuit Court of Appeals has made clear, however, that the meet and confer requirement does not
apply to a Rule 37(c)(1) motion for sanctions for failure to disclose or supplement as required by
26(a) or (e). *See Vanderberg v. Petco Animal Supplies Stores, Inc.,* 906 F.3d 698, 707 (8th Cir.
2018) ("Petco did not violate the meet and confer requirement of Rule 37(a)(1) because that
requirement does not apply to requests for exclusion of evidence under Rule 37(c)(1)."); *see also
E & I Global Energy Servs., Inc. v. Liberty Mut. Ins. Co.,* Civ. No. 4:20-4033-KES, 2023 WL
372106, at*2 (D.S.D. Jan. 24, 2023) (stating that the meet and confer requirement only applies to

motions to compel discovery under Rule 37(a)(1), not to a motion brought under Rule 37(c) for a failure to disclose).

The Court also does not find that Plaintiff's Motion was, as argued by Defendant, brought in bad faith. In support of its bad faith argument, counsel for Defendant, Mr. Knight, attests that the attorney who signed the Motion for Sanctions on behalf of Plaintiff, Jeffrey Collins, has since withdrawn and disavowed the Motion and does not agree with or condone the "accusations" made in against RCPE and its attorneys. (Doc. 57 at 1418 n.2). Mr. Collins has subsequently filed an affidavit with this Court. (Doc. 69-1). Therein, he explains that his withdrawal was not in any way connected with a disavowal of the Motion for Sanctions filed by Plaintiff, but was due to the fact that this matter was transferred to counsel of record, Aaron Eiesland's, new law firm. (Doc. 69-1). Mr. Collins attests that in his conversation with Mr. Knight, he stated not that he did not condone or believe that accusations in the Motion for Sanctions, but rather that in cases in which he worked with Mr. Knight previously, he had not observed Mr. Knight's firm to behave in the manner accused of in the Motion for Sanctions. (Doc. 69-1). Mr. Collins affirmed that he was not directly involved in the case prior to August 1, 2023, and was not part of the discovery interactions and discussions between the parties and that his affidavit submitted with the Motion for Sanctions therefore did not refer to the content of these interactions. (Doc. 69-1).

When considering a Rule 37(c)(1) motion for sanctions for failure to supplement disclosures and responses under Rule 26(e)(1), the Court must determine whether the disclosing party corrected or supplemented the disclosures in a timely manner. The "timely manner" inquiry of Rule 26(e) considers when the new facts were supplemented relative to when the new facts were discovered by the supplementing party. *Hysitron Inc. v. MTS Sys. Corp.*, Civ. No. 07-1533, 2010 WL 55987, at *6 (D. Minn. Jan. 4, 2010). Here, on September 26, 2022, Plaintiff served upon Defendant Set One of Plaintiff's Request for Production of Documents, requesting the following information:

> 34. All documents, alerts, notifications, and reports pertaining to the New Underwood Region of South Dakota for the time period of July 25, 2019, through August 3, 2019.
>
> 35. All documents pertaining to weather information pertaining to the New Underwood Region of South Dakota for the time period of July 25, 2019 through August 3, 2019.

(Doc. 52-5).  In response, on November 9, 2022, Defendant provided RCPE's Daily Operation Bulletin, but not the August 2, 2019, AccuWeather/SkyGuard flash flood warning that many individuals within RCPE received approximately 90 minutes prior to the derailment. (Doc. 52-5). This email was not disclosed until May 3, 2023, well after the February and March depositions of several of the primary witnesses in this case had taken place.  The full list of RCPE recipients of the Flash Flood weather alert was not disclosed until July 21, 2023, after the July 19, 2023, discovery deadline had passed.  Defendant provides no explanation for its delay in disclosing this vital document that was received by a large number of individuals and groups within RCPE, including several of the pertinent witnesses in this case.

The Court finds that Plaintiff was prejudiced by Defendant's failure to supplement its disclosure in a timely manner.  The deposition testimony by track inspectors Jared Rutherford and Jared Hook that accompanied this motion stated that if RCPE receives a significant weather event, the roadmaster for that section of track (Mike Kellar in this case) or his boss would direct the inspectors to do storm patrol.  In his February 22, 2022, deposition, Rod Wiseman, the General Manager of RCPE, testified that he did not know whether there was a major weather event that occurred during the area of the incident and on February 23, 2022, Mike Kellar testified that no one had received any notifications from AccuWeather or any weather-type events.  This was not the case, as evidenced by the long list of RCPE recipients (including Mr. Kellar and Mr. Wiseman) who had received the AccuWeather/SkyGuard flash flood warning at 12:34 a.m., about 90 minutes prior to the derailment. There is no indication in the record before the Court that Plaintiff was otherwise aware that these individuals or others within RCPE had received this flash flood warning.  Plaintiff was therefore not able to question key witnesses about their receipt of this weather alert during depositions that took place months prior to Defendant's untimely disclosure.

Who in RCPE received this AccuWeather flash flood alert for the area is an important fact and in Plaintiff's Motion for Partial Summary Judgment that is pending with the Court, Defendant appears to contest who within RCPE received the email.  Plaintiff's statement of material facts provides that "about 90 minutes before the derailment, at 12:34 a.m. on Friday, August 2, 2019, RCPE received the "Flash Flood" warning sent with 'High' important, relevant to mile markers that encompassed the derailment sight to RCPE." (Doc. 47, ¶ 37).  In its response, RCPE disputes these facts, stating that "the referenced document purports to have been sent to certain employees

at RCPE at 12:34 am. The document does not establish who received the email or when it was received." (Doc. 63, ¶ 37). Of course, due to the untimely disclosure, Plaintiff did not have an opportunity to question Mike Kellar, Rod Wiseman, or others about their receipt of the flash flood email and the Court finds that Plaintiff was prejudiced thereby.

In his Motion, Plaintiff requests that Court sanction Defendant by finding RCPE liable for Plaintiff's negligence claim and by ordering monetary sanctions. (Doc. 50 at 666). Plaintiff requests that the Court preclude Defendant from relying on evidence produced in its "discovery dumps" and award attorneys' fees to Plaintiffs for the costs of bringing the present motion. In the alternative, Plaintiff asks that the Court re-open discovery for Plaintiff to allow him to take and retake depositions with the opportunity to utilize the document dumps, along with the associated costs, including attorney fees, in conducting such discovery. (Doc. 50 at 679). One of the purposes of sanctions under Rule 37(c) is "compensate the opposing party for 'all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly.' " *Johnson Int'l Co. v. Jackson Nat. Life Ins. Co.*, 19 F.3d 431, 439 n.10 (8th Cir. 1994) (citation omitted). The Court, having found Defendant's disclosure of the flash flood alert to be untimely and Plaintiff to have suffered prejudice thereby, will allow Plaintiff until April 1, 2024, to retake any depositions he deems necessary and orders that Defendant bear the associated costs, including court reporter and attorneys' fees associated with these depositions.

## II.   Motion to Compel

On August 1, 2023, Plaintiff filed his Second Motion to Compel Responses and Request for Production of Documents (Set Two). (Doc. 49). The Motion to Compel has been fully briefed and is discussed in more detail below.

On April 3, 2023, Plaintiff served a second set of interrogatories and requests for production of documents related to Defendant's identification of a significant weather event and resulting special inspections. (Docs. 53-5, 53-6). Plaintiff's request for production 42 seeks documentation regarding agreements, directions, understanding, and scope of work between Defendant and AccuWeather. (Doc. 53-6). Plaintiff stated that this information pertains to whether Defendant was negligent in the outsourcing of its duties regarding weather event identification and/or determinations regarding whether a track inspection needs to be performed. (Doc. 49, ¶ 7). Plaintiff's Interrogatory 28 asks Defendant to identify all factors considered by RCPE for

determining if a significant weather event on or near Defendant's tracks exists or that an inspection is required prior to allowing railroad traffic on its tracks to proceed. (Doc. 53-5). Plaintiff's requests for production 43 and 44 seek documents explaining, describing or referencing the considerations made by Defendant in making a determination that a significant weather event exists or that a warning, slow down order, train delay, or inspection of railroad tracks must be conducted prior to allowing railroad traffic on its tracks as a result of a significant weather event. (Doc. 53-6). Plaintiff's request for production 41 seeks all SkyGuard warnings issued in the State of South Dakota received by Defendant for the 2 years prior to the derailment and any documents identifying warnings, slow orders, and/or train delays issued or suffered by Defendant as a result of such warning. (Doc. 53-6). Plaintiff states that the relevancy of past records responding to weather warnings shows how and in what manner Defendant responds to weather alerts similar to, or less extreme than, the one in this matter—i.e. Defendant's custom and practice in responding to weather events such as incident in question. (Doc. 49, ¶ 9).

Accompanying Plaintiff's August 1, 2023, Motion to Compel is Plaintiff's Certificate of Good Faith Conference. (Doc. 51). Therein, counsel for Plaintiff declares that he engaged in a good faith effort to resolve the discovery dispute by engaging in numerous conversations and email since the original meet and confer session held on November 30, 2022, with opposing counsel, Steven T. Williams, and subsequent meet and confers held with William McFadden. (Doc. 51).

### 1. Standard of Review

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense. . ." Fed. R. Civ. P. 26(b)(1). "Broad discovery is an important tool for the litigant, and so '[r]elevant information need not be admissible at the trial. . . ." *WWP, Inc. v. Wounded Warriers Family Support*, 628 F.3d 1032, 1039 (8th Cir. 2001) (quoting Fed. R. Civ. P. 26(b)(1)). "Relevancy . . . encompass[es] 'any matter that bears on, or that reasonably lead to other matter that could bear on, any issue that is or may be in the case.' " *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Although the standard of relevance in the context of discovery may be broader than in the context of admissibility, "this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." *Hofer v. Mack Truck, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Thus, "[s]ome threshold showing of relevance must be made before parties are required to open

wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issue of the case." *Hofer*, 981 F.2d at 380. "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *EEOC v. Woodmen of the World Life Ins. Society*, Civ. No. 8:03-CV-165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (citing *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972)); *see also Kirshenman v. Auto-Owners Ins.*, Civ. No. 09-4190-KES, 2012 WL 548857, at *5 (D.S.D. Feb. 21, 2012).

After the movant has met this burden of relevancy, the party opposing the motion bears the burden of establishing the lack of relevancy or that complying with the motion would be unduly burdensome and/or expensive. *Highmark, Inc. v. Northwest Pipe Co.*, Civ. No. 10-5089-JLV, 2012 WL 997007 (D.S.D. Mar. 23, 2012). Bare assertion of undue burden, significant expense, or oppression are not ordinarily sufficient to withstand a motion to compel. *Id.* "The party opposing discovery has the burden to show that its objections are valid by providing explanation or factual support." *Hohn v. BSNF Ry. Co.*, Civ. No. 8:05-CV-552, 2007 WL 2572440, at *3 (D. Neb. May 10, 2007); *see also Highmark*, 2012 WL 997007, at *7 ("[T]he party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome, or oppressive."). The Advisory Committee's Note to the 2000 Amendments to Rule 26(b)(1) provide guidance as to how courts should define the scope of discovery in a civil case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action . . . In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. . . . When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims or defenses, and the scope of the discovery requested.

2000 Advisory Notes (GAP Report) to Rule 26(b)(1). The 2000 Advisory Notes clarify that the information sought in discovery only if it is relevant to the claims or defenses of the case, or, upon a showing of good cause, to the subject matter of the case. 2000 Advisory Notes to Rule 26(b)(1). Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit . . ." Fed. R. Civ. P. 26(b)(1), (2)(C).

### 2. Application

The Court will address in turn each item that is subject to Plaintiff's Second Motion to Compel:

**a. Interrogatory No. 28 – Identify all factors considered by individuals responsible for determining if a significant weather event exists on or near Defendant's railroads or that an inspection of the tracks is required prior to allowing railroad traffic on its tracks to proceed.**

In response to Interrogatory No. 28, Defendant disclosed Dispatcher Rules-Instructions on July 18, 2023, as part of its Eighth Supplemental Response. (Doc. 57-19). It does not appear that Plaintiff has provided a copy of the Dispatcher Rules-Instructions to the Court, but states in his brief that this document provides that "a discussion is required between a supervisor and dispatch regarding weather events but does not describe what factors are to be considered during that discussion." (Doc. 70 at 2325). For the moment, the Court will accept Plaintiff's summary of the Dispatcher Rules-Instructions. On August 2, 2023, RCPE clarified that it had no other policy responsive to this request. The Court finds that Defendant has sufficiently complied with Production No. 28. In the depositions of these individuals, Plaintiff had the opportunity and did address factors considered by them in making these determinations.

**b. Request for Production No. 41 – All SkyGuard warnings issued in the state of South Dakota received by Defendant for the last 2 years prior to the incident and**

**any and all documents, records, or information identifying warnings, slow orders, and/or train delays issued or suffered by Defendant as a result of such warnings.**

Request for Production No. 41 was served upon Defendant on April 3, 2023. (Doc. 53-6). In its May 3, 2023, response to Plaintiff's Requests for Production of Documents, Set Two, Defendant objected to the request as being overbroad and unduly burdensome, but disclosed the August 2, 2019, SkyGuard flash flood warning that it said was received by Mike Kellar and Blake Jones—the two individuals that Defendant indicated would have received SkyGuard warnings during this time period. (Doc. 61-2). In its Second Supplemental Response filed on July 21, 2023, Defendant indicated that in addition to Mike Kellar and Blake Jones, the following individuals and groups also received the August 2, 2019, SkyGuard flash flood warning: ARDC Dispatcher Group; ARDC RCPE Management; Chad Roob; Chase Hart; Crystal Blasius; Daniel Dalton; Gina Zink; Greg Mellon; John McDonald; Michael Anderson; Rod Wiseman; Ted Gibson; and Timothy Paluch. (Doc. 61-5). In its Third Supplemental Response filed on August 2, 2023, Defendant argues that it conducted a search and does not have any other responsive documents from August 2, 2019, the date of the derailment. (Doc. 61-7). In a July 20, 2023, email to Plaintiff's counsel, Attorney McFadden represented that Defendant was not willing to waive its prior objections, and would limit its disclosure to responsive documents from August 2, 2019, the date of the incident. (Doc. 61-4).

In opposition to the Motion to Compel, Defendant objects to Plaintiff's requests for Production No. 41 to the extent that it extends 2 years prior to the incident and beyond the geographic scope of the incident to the entire State of South Dakota. Defendant argues that such a request is overbroad and unduly burdensome. Plaintiff argues that he seeks this information to understand how often Defendant receives weather related alerts and how Defendant uses its weather warnings to inform its crews about possible dangerous conditions or when it should perform inspections. (Doc. 70 at 2326).

The Federal Employers' Liability Act ("FELA") provides the exclusive remedy for a railroad employee injured as a result, in whole or in part, of his or her employer's negligence. 45 U.S.C. § 51. Under FELA, "a railroad has a duty to use reasonable care in furnishing its employees with a safe place to work." *Atchinson, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 558 (1987). Under FELA, an employer's "fault may consist of a breach of the duty of care . . . or of a

breach of some statutory duty." *Atwood v. Union Pacific R.R. Co.*, Civ. No. 8:21-CV-394, 2023 WL 5607972, *4 (D. Neb. Jun. 30, 2023) (citing *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432 (1958)). A railroad's duty of care under FELA "is measured by the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances and by what these same persons would anticipate as resulting from a particular condition." *Ackley v. Chicago & N. W. Transp. Co.*, 820 F.2d 263, 267 (8th Cir. 1987).

The Court acknowledges that unlike evidence of industry custom and practice, evidence of Defendant's past responses to weather events is likely not relevant and admissible to the questions of duty of care or breach in this case. *See Rodriguez v. Delay Connecting R.R. Co.*, 473 F.2d 819, 821 (6th Cir. 1973) (citing *Stone v. New York C. & St. L. RR Co.*, 344 U.S. 407 (1953)) ("Evidence on the practices of other railroads is generally admissible in F.E.L.A. actions."); *Pfaffle v. BNSF Ry. Co.*, Civ. No. 2:17-CV-407-TOR, 2020 WL 714155, at *2 (E.D. Wash. Feb. 12, 2020) (quoting *Hoyt v. Central R.R.*, 243 F.2d 840, 844 (3d Cir. 1957)) ("Certainly[,] the customary practice of an industry is admissible on the score of the absence of negligence."); *Glow v. Union Pac. R.R. Co.*, 652 F.Supp.2d 1135, 1141 (E.D. Cal. 2009) (citing *Balt. & Ohio R.R. Co. v. Groeger*, 266 U.S. 521, 531 (1925) ("It is the jury's duty to consider industry practice and available alternatives as part of its calculus to determine whether defendant's conduct was negligent."). However, as discussed above, relevant documents in discovery need not be admissible at the trial. In discovery, Plaintiff has sought to understand the factors Defendant takes into consideration when responding to a weather event. It appears that other than the Dispatcher Rules Instructions, Defendant has no other policy guiding how this determination should be made and the information requested in RFP No. 41 would be responsive to that inquiry. Additionally, such information could lead to other relevant evidence or be used for other purposes such as attacking credibility. Defendants have provided no factual support or any reasoning as to why this request is unduly burdensome. For example, there is no showing that the scope of Defendant's operations in South Dakota is so extensive that production would be unduly burdensome. Accordingly, Plaintiff's Request for Production 41 is granted.

    **c.  Request for Production 42: All documents, records, and information regarding any agreements, directions, understandings, scope of work, between Defendant or its affiliates, including G&W, with AccuWeather.**

The Court finds that these documents were located and produced subsequent to the filing of this motion on August 7, 2023, as part of RCPE's fourth supplemental responses to Plaintiff's second request for production of documents. (Doc. 61-9). Accordingly, this request is denied.

> **d. Request for Production No. 43:   All documents, records, and information explaining, describing, referencing considerations made by AccuWeather or Defendant to make a determination that a significant weather event exists.**

In response to Interrogatory No. 42, Defendant disclosed Dispatcher Rules-Instructions on July 18, 2023, as part of its Eighth Supplemental Response. (Doc. 57-19). On August 2, 2023, RCPE clarified that it had no other policy responsive to this request. (Doc. 61-7). The Court finds that Defendant has sufficiently complied with this request.

> **e. Request for Production No. 44:   All documents, records, and information explaining, describing, referencing considerations made by AccuWeather or Defendant to make a determination that a warning, slow down order, train delay, or inspection of the railroad's tracks must be conducted prior to allowing railroad traffic on its tracks, as a result of a significant weather event.**

In its July 21, 2023, response, Defendant objected to the request as vague, overbroad and unduly burdensome as it was not limited in time or scope, but stated that it was working on locating responsive information and will supplement its response. (Doc. 61-5). On August 2, 2023, RCPE clarified that it had no other policy responsive to this request. (Doc. 61-7). The Court finds that RCPE has complied with this Request for Production.

### III.   A Word to the Parties

There has been an extraordinary amount of contention in this and the *Peterson* case which arises from the same incident, Civ. No. 22-5064. The parties shall proceed within the true spirit of the discovery procedures in federal court and if differences arise, work responsibly to resolve these differences before returning to Court to resolve every dispute.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's Motion for Sanctions (Doc. 50) is granted in part as described in this Opinion and the Court will allow Plaintiff until April 1, 2024, to retake any depositions he deems necessary and order that Defendant shall bear the associated costs, including court reporter and attorneys' fees associated with these depositions;

2. Plaintiff's Second Motion to Compel (Doc. 49) is granted in part and Defendant will be required to comply with Plaintiff's Request for Production No. 41;

3. Defendant's Motion for Hearing Requesting Status Conference (Doc. 72) is DENIED; a status conference had been set for December 6, 2023, but was cancelled due to the Judge's oral surgery;

4. The Motion for Sanctions and the Second Motion to Compel having now been resolved, Defendants Motion for Protective Order for a Rule 30(b)(6) deposition of RCPE's corporate designee (Doc. 77), noticed for September 21, 2023, is DENIED.

Dated this 2nd day of January, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK